IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PRINCE PARKER, | § | |
| | § | |
| Appellant-Below, | § | No. 507, 2025 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| THE BORSELLO COMPANIES, | § | C.A. No. N25A-04-004 |
| INC., | § | |
| | § | |
| Appellee-Below, | § | |
| Appellee. | § | |

Submitted: May 22, 2026
Decided: August 10, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     Prince Parker filed this appeal from the Superior Court's decision affirming the Industrial Accident Board's (the "Board") denial of his petition to determine compensation due.  For the reasons set forth below, we affirm the Superior Court's judgment.

(2)     Parker began working for The Borsello Companies, Inc. ("Borsello") in 2020.  His job duties included operating a forklift and mixing mortar.  On February 19, 2024, Parker lifted and emptied more than 100 buckets of water to mix mortar. Parker claimed in the Board proceeding that he suffered a back injury that day and

reported the injury to other Borsello employees, including foreman Johnny Arebalo. Arebalo denied that Parker reported an injury to him.

(3)     On February 29, 2024, Parker texted project manager Zach Black:

I don't know what I did with Mark [Borsello—President of Borsello] number but could you let him know that making grout is screwing my back up I've had spinal surgery and can't even straighten up sometimes I make mortar operate and labor all day that's enough.[1]

Parker had fusion surgery for a neck fracture approximately thirty years earlier. Black responded to Parker's text, telling him to contact Mark Borsello and providing the phone number. Parker did not contact Mark Borsello about any injury.

(4)     Parker continued performing his job as normal until mid-March. On a day that he was not scheduled to work, Parker came to the work site anyway. Borsello supervisors told Parker to leave, but he initially refused to do so. Parker eventually left, and Mark Borsello terminated him for insubordination in a telephone call. The termination was documented in a letter dated March 18, 2024. Parker filed a claim for unemployment compensation. The Division of Unemployment Insurance denied the claim, accepting Borsello's representation that Parker was terminated for cause.

(5)     On March 21, 2024, Parker went to the emergency room for back pain, muscle spasms, and shooting pains in his leg. He told emergency room personnel that the pain and spasms had been going on for over a year. According to the hospital

---

[1] App. to State's Answering Br. at B292.

records, Parker denied any recent trauma and stated that he had not followed his primary care doctor's referral to see a specialist. Parker had last seen his primary care doctor in October 2023.

(6) The hospital referred Parker to neurosurgeon Dr. Mark Eskander, who first saw Parker on April 25, 2024. Dr. Eskander restricted Parker from any work activity and referred him to a pain-management specialist. Parker received multiple injections that provided temporary pain relief.

(7) On August 5, 2024, Parker filed a petition with the Board to determine compensation due. Parker alleged that he suffered a lumbar spine injury in the course of his employment on February 19, 2024. He sought total disability benefits beginning on April 25, 2024 and payment of his outstanding medical bills.

(8) The Board held a hearing on February 26, 2025. Parker, Arebalo, Mark Borsello, and another Borsello employee testified at the hearing. The testimony of Dr. Eskander and Borsello's expert, orthopedic spine surgeon Dr. Scott Rushton, was admitted through deposition transcripts.

(9) Based on his treatment of Parker and review of the medical records, Dr. Eskander opined that Parker suffered from spondylolysis (crack in the vertebrae) and spondylolisthesis (shift in the vertebrae) that were aggravated and made symptomatic by his work on February 19, 2024. He recommended that Parker undergo spinal fusion surgery with laminectomy. Dr. Rushton disagreed; based on his evaluation of Parker and review of the medical records, Dr. Rushton opined that there was no

3

evidence that Parker suffered an acute traumatic injury or aggravated the preexisting degeneration of his spine on February 19, 2024. He testified that Parker would not benefit from surgery.

(10) On March 31, 2025, the Board issued a decision denying Parker's petition because he did not meet his burden of proving that he suffered a compensable injury on February 19, 2024. Parker appealed the Board's decision to the Superior Court, which affirmed the Board's denial of the petition for compensation due. This appeal followed.

(11) "Generally, this Court's review of a decision of the Board is limited to a determination of whether there is substantial evidence to support the Board's findings."[2] Substantial evidence is "more than a scintilla but less than a preponderance of the evidence."[3] The Board has the exclusive responsibility of "[w]eighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony . . . ."[4] This Court reviews alleged errors of law *de novo*.[5]

(12) Under the Delaware Workers' Compensation Act, employees are entitled to compensation for personal injury "arising out of and in the course of employment."[6] The petitioner has the burden of establishing that the alleged injuries occurred within

---

[2] *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000).

[3] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[4] *Noel-Lisziewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013).

[5] *Elzufon*, *Austin, Tarlov & Mondell, P.A. v. Lewis*, 309 A.3d 424, 430 (Del. 2023).

[6] 19 *Del. C.* § 2304.

the course and scope of his employment.[7]  The petitioner must "show a causal link between the accident that occurred and the injuries that he sustained."[8]

(13)  Parker's arguments on appeal may be fairly summarized as follows: (i) his attorney in the Board proceedings was inadequate; (ii) Borsello witnesses committed perjury and fabricated exhibits; and (iii) Borsello employees made racist comments and engaged in other misconduct while he was employed there.

(14)  Parker claims that his attorney in the Board proceedings provided insufficient representation, which interfered with his ability to present witnesses and exhibits.  This claim is outside the scope of this appeal.  If Parker wishes to assert a claim of legal malpractice against his former attorney, he must pursue a separate cause of action.

(15)  Parker next contends that the Borsello witnesses committed perjury and submitted fabricated exhibits during the Board hearing.  Mark Borsello testified that he terminated Parker on March 15, 2024, but there were warning notices to Parker dated March 17, 2024 and March 18, 2024.  Parker also claims that Borsello witnesses testified falsely about the mixer that he had to pour the buckets of water into and submitted a "fake video" of the mixer.[9]

---

[7] *Powell v. OTAC*, 223 A.3d 864, 871 (Del. 2019).

[8] *Hardy v. Eastern Quality Vending*, 2015 WL 2378903, at *6 (Del. Super. May 12, 2015) (citing *Amalfitano v. Baker*, 794 A.2d 575, 577 (Del. 2001)).

[9] Opening Br. at 4.

5

(16)   There was conflicting evidence concerning the exact date of Parker's termination.  The Board found that Parker was terminated for insubordination on March 18, 2024, after he came to the work site on March 15, 2024 and initially refused to leave even though he was not scheduled to work that day.  It is undisputed that Parker was terminated in mid-March after staying on the worksite when he was not supposed to be there; the exact termination date was irrelevant to the Board's decision.

(17)   As to the mixer, Parker and Borsello offered different accounts as to height of the mixer and how much effort Parker had to expend in lifting and emptying buckets of water into the mixer on February 19, 2024.  Parker's counsel objected to Borsello's introduction of a video showing the operation of a mixer on the basis that it was different than the mixer Parker described.  The Board overruled the objection, stating that counsel could raise those differences on cross-examination.  Parker's counsel did not do so but explored the differences with Parker during his direct examination.

(18)   To the extent Parker claims that the Board did not comply with the Delaware Uniform Rules of Evidence in admitting the video, the Rules of Evidence "do not strictly apply to administrative hearings."[10]  The Industrial Accident Board Rules provide that the Rules of Evidence "shall be followed insofar as practicable," but "[t]he Board may, in its discretion, disregard any customary rules of evidence and

---

[10] *Tenaglia-Evans v. St. Francis Hosp.*, 913 A.2d 570, 2006 WL 3590385, at *3 (Del. Dec. 11, 2006) (TABLE).

6

legal procedures so long as such a disregard does not amount to an abuse of its discretion."[11] Parker has not shown any abuse of discretion by the Board in its admission of the video.

(19) In any event, the Board's conclusion did not turn on the height of the mixer or Parker's efforts that day. The Board simply did not find credible Parker's testimony that he suffered an injury on February 19, 2024. Based on the documentary evidence, Parker did not mention any back pain to Borsello until his February 29, 2024 text. He did not report any injury to Mark Borsello and did not seek medical treatment until March 21, 2024, at which time he denied a recent injury and said that he had been suffering back pain for more than a year. Because Dr. Eskander's causation opinion depended on Parker's description of the events leading to his back pain, the Board found it less persuasive than Dr. Rushton's opinion. This Court defers to the Board's assessment of witnesses' credibility.[12]

(20) Finally, Parker's claims that Borsello employees made racist comments and engaged in other misconduct were not raised with the Board and will not be considered by this Court.[13] We agree with the Superior Court that the Board's

---

[11] 19 Del. Admin. C. § 1331–14.3.

[12] *Buckley v. Del. Valley Rehab. Servs.*, 711 A.2d 789, 792 (Del. 1998) ("The applicable standard of appellate review defers to the factfinder's assessment of credibility.").

[13] Supr. Ct. R. 8.

decision is free from any reversible legal error and is supported by substantial evidence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice